**Affirmed and Opinion Filed August 13, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-01425-CV

## IN RE: THE COMMITMENT OF BILL DON RATLIFF

On Appeal from the Criminal District Court No. 5
Dallas County, Texas
Trial Court Cause No. CV1570002

## MEMORANDUM OPINION

Before Justices Francis, Brown, and Stoddart
Opinion by Justice Stoddart

This appeal involves a civil commitment pursuant to the Sexually Violent Predator Act ("SVP Act"). A jury found Bill Don Ratliff is a sexually violent predator as defined in section 841.003 of the Texas Health and Safety Code and the trial court's judgment orders Ratliff committed until his behavioral abnormality changes to the extent he no longer is likely to engage in a predatory act of sexual violence. In six issues, Ratliff argues the evidence is legally and factually insufficient to support a finding that he is a repeat sexually violent offender, the trial court erred by finding Oklahoma's Lewd Molestation statute is substantially similar to a sexually violent offense listed in the SVP Act, the court committed fundamental error by admitting evidence he is HIV positive, and the trial court erred in its rulings on questions at voir dire. We affirm the trial court's judgment and order of civil commitment.

BACKGROUND

On August 17, 1982, Ratliff was convicted in Oklahoma for "Lewd or Indecent Acts with a Child under 14" and sentenced to three years' confinement. On April 24, 1984, he was convicted in Oklahoma for "Lewd Molestation" and sentenced to ten years' confinement. On April 10, 1992, he was convicted in Dallas County for "Aggravated Sexual Assault of a Child under 14" and sentenced to twenty-five years' confinement.

The State filed this suit on December 18, 2015, alleging Ratliff is a sexually violent predator and requesting his commitment for treatment and supervision pursuant to the SVP Act. The State alleged Ratliff was a repeat sexually violent offender based on the convictions described in the previous paragraph, and that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Dr. Randall Price, a forensic psychologist, testified that Ratliff suffers from a behavioral abnormality as defined by law and is likely to engage in a predatory act of sexual violence. Dr. Price based his opinion on a review of Ratliff's records and on interviews, testing, and evaluation of Ratliff. Dr. Price diagnosed Ratliff with pedophilic disorder, non-exclusive type, and with having traits and features of an antisocial personality disorder.

Ratliff did not dispute his prior convictions at trial. He admitted that the conduct in the first Oklahoma offense involved oral sex with a six-year-old child, and the second Oklahoma offense involved oral sex with and masturbating an eleven-year-old child. He also admitted to the conduct resulting in the aggravated sexual assault conviction in Texas.

The trial court, at the State's request and over Ratliff's objection that judicial notice "invaded the province of the jury," took judicial notice that title 21, section 1123, of the Oklahoma statutes "contains elements substantially similar to the elements of the offenses listed in paragraphs A, B, C, D, or E [of section 841.002(8)] in the Texas Health and Safety Code." The jury found

that Ratliff is a sexually violent predator. The trial court rendered judgment on the jury's verdict and ordered Ratliff committed for treatment and supervision. Ratliff's motion for new trial challenged the legal and factual sufficiency of the evidence, but was overruled by the trial court.

## ANALYSIS

### A. Sufficiency of the Evidence

In his first and second issues, Ratliff argues the evidence is legally and factually insufficient to support the finding that he is a sexually violent predator. Ratliff preserved these issues for appeal by raising them in his motion for new trial. *See* TEX. R. APP. P. 33.1(a); TEX. R. CIV. P. 324(b); *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 220–21 (Tex. 1992) (legal sufficiency challenge following jury trial may be preserved by motion for new trial).

The SVP Act requires the State to prove beyond a reasonable doubt that a person is a sexually violent predator. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.062(a). A person is a sexually violent predator if the person (1) is a repeat sexually violent offender and (2) suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a). A person is a "repeat sexually violent offender" if the person has been convicted of more than one "sexually violent offense" and a sentence is imposed for at least one of the offenses. *Id.* § 841.003(b). As relevant in this case, a sexually violent offense means aggravated sexual assault or an offense under the law of another state that contains elements substantially similar to the elements of an offense listed in paragraph (A), (B), (C), (D), or (E) of the section 841.002(8) of the health and safety code. *See id.* § 841.002(8); TEX. PENAL CODE ANN. § 22.021. A behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." TEX. HEALTH & SAFETY CODE ANN. § 841.002(2). A "predatory act" is one that is directed toward individuals for the

primary purpose of victimization. *Id*. § 841.002(5).

We review the legal sufficiency of the evidence using the appellate standard of review for criminal cases. *In re Commitment of Dever*, 521 S.W.3d 84, 86 (Tex. App.—Fort Worth 2017, no pet.) (citing *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied)); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We assess the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the elements required for commitment under the SVP Act beyond a reasonable doubt. *Dever*, 521 S.W.3d at 86.

When reviewing the factual sufficiency of the evidence to support the civil commitment order, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Id*.[1]

Ratliff does not question the sufficiency of the evidence on the behavioral abnormality element of the sexually violent predator finding. Therefore, we focus on the repeat sexually violent offender element. Ratliff challenges the sufficiency of the evidence on this element, but his main contention is a legal one: That the Oklahoma statute does not contain elements substantially similar to the offenses listed in section 841.002(8) of the health and safety code. Thus, he contends, the evidence is insufficient to support the jury's finding even though the evidence shows that Ratliff was convicted and sentenced for the two Oklahoma offenses.

It is undisputed that Ratliff was convicted of the sexually violent offense of aggravated sexual assault and sentence was imposed for that offense. *See* TEX. HEALTH & SAFETY CODE ANN.

---

[1] Factual sufficiency review has been abandoned in criminal cases in which the burden of proof is beyond a reasonable doubt, *see Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), but the Beaumont Court of Appeals, which until recently handled the bulk of SVP Act appeals, has continued to perform a factual sufficiency review. *See In re Commitment of Day*, 342 S.W.3d 193, 206–13 (Tex. App.–Beaumont 2011, pet. denied) (explaining that as an intermediate appellate court, it has a constitutional duty to review factual sufficiency when the issue is raised on appeal; that the Texas Supreme Court, not the Court of Criminal Appeals, construes the Texas constitution as it is applied in civil cases; and that it would continue to apply the factual sufficiency review until the Texas Supreme Court overrules or distinguishes its binding precedent); *see also Dever*, 521 S.W.3d at 86.

§ 841.002(8)(A); TEX. PENAL CODE ANN. § 22.021. The question is whether one of his prior convictions under Oklahoma law qualifies as a sexually violent offense because it contains elements substantially similar to the elements of an offense listed in section 841.002(8). *See* TEX. HEALTH & SAFETY CODE ANN. § 841.002(8)(G). Indecency with a child by contact under penal code section 21.11(a)(1) is one such offense. *See id*. § 841.002(8)(A).

Whether the elements of an offense under another state's law are substantially similar to the elements of a Texas offense requires statutory construction, which is a question of law for the trial court to determine. *See Suares v. State*, No. 05-07-00862-CR, 2008 WL 2747186, at \*2 (Tex. App.—Dallas July 16, 2008, pet. ref'd) (mem. op.); *Hardy v. State*, 187 S.W.3d 232, 236 (Tex. App.—Texarkana 2006, pet. ref'd). We review rulings on questions of law de novo. *See In re Commitment of Cleaveland*, No. 09-12-00428-CV, 2014 WL 4364263, at \*3 (Tex. App.—Beaumont Sept. 4, 2014, pet. denied) (mem. op.).

In conducting a substantial similarity analysis, we consider (1) whether the statutory elements have a high degree of likeness (they need not be identical), (2) whether the statutes seek to prevent a similar danger to society, and (3) whether the "class, degree, and punishment range of the two offenses are substantially similar." *Anderson v. State*, 394 S.W.3d 531, 536 (Tex. Crim. App. 2013); *see also Prudholm v. State*, 333 S.W.3d 590, 594–99 (Tex. Crim. App. 2011); *In re Commitment of Williams*, No. 02-17-00133-CV, 2018 WL 771962, at \*3 (Tex. App.—Fort Worth Feb. 8, 2018, no pet.) (mem. op.); *Cleaveland*, 2014 WL 4364263, at \*3.

Title 21, section 1123, of the Oklahoma statutes establishes the criminal offense of Lewd Molestation, which covers "three different types of conduct: (1) making a lewd or indecent proposal to a child under sixteen (16) years to have unlawful sexual relations; (2) looking upon or touching the body or private parts of a child under sixteen (16) years; and (3) inviting or persuading a child under sixteen (16) years to go alone with any person to a secluded or secret place with the

intent to lewdly touch the child's private parts." *Reeves v. State*, 818 P.2d 495, 504 (Okla. Crim.

App. 1991). Section 1123, at the time of Ratliff's convictions, provided in part:

> [A]ny such adult person who shall intentionally and designedly look upon, touch, maul or feel of the body or private parts of any child under the age of fourteen (14) years in any lewd or lascivious manner by any acts not amounting to the commission of any crime against public decency and morality, as may now be defined by the laws of Oklahoma; . . . shall be deemed guilty of a felony and upon conviction thereof, he shall be punished by imprisonment in the Oklahoma State Penitentiary for a term of not less than one (1) year nor more than twenty (20) years.

*See Webb v. State*, 538 P.2d 1054, 1058 n.3 (Okla. Crim. App. 1975) (quoting 1971 version of

OKLA. STAT. tit. 21, § 1123). Section 1123 was amended in 1983 to increase the age of the child

to sixteen years. *See Reed v. State*, 718 P.2d 373, 375 (Okla. Crim. App. 1986) (noting 1983

version of statue is identical to 1971 statute except it protects minors under the age of 16 rather

than 14 years of age). Lewd and lascivious mean "an unlawful indulgence or eagerness for sexual

indulgence." *Reeves*, 818 P.2d at 504.

In comparison, indecency with a child by contact under penal code section 21.11(a)(1) is

one of the offenses listed in section 841.002(8)(A). TEX. HEALTH & SAFETY CODE ANN. §

841.002(8)(A). Penal code section 21.11(a)(1) provides:

> (a) A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex and regardless of whether the person knows the age of the child at the time of the offense, the person:
>
>> (1) engages in sexual contact with the child or causes the child to engage in sexual contact.

TEX. PENAL CODE ANN. § 21.11(a)(1). "Sexual contact" means the following acts, if committed

with the intent to arouse or gratify the sexual desire of any person:

> (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or
>
> (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

*Id*. § 21.11(c). Indecency with a child by contact is a second degree felony punishable by two to

twenty years in prison. *Id.* §§ 21.11(d); 12.33(a).

Ratliff concedes that the second portion of section 1123 (looking upon or touching the body or private parts of a child) is similar to the Texas offense of indecency with a child by contact in that both offenses: (1) criminalize sexual contact with children of similar ages,[2] (2) are felonies,[3] and (3) have similar ranges of punishment.[4] We also note both offenses have similar intent requirements, acting in a lewd and lascivious manner or with the intent to arouse or gratify sexual desires.[5]

Ratliff contends, however, that because the records of the Oklahoma convictions admitted in evidence do not contain the charging instruments in those cases, it is impossible to tell whether he was convicted for the touching offense under section 1123 or for one of the non-contact offenses described in other parts of that statute. He further asserts that his specific conduct in the Oklahoma cases should not be considered in determining whether the elements of the offenses are substantially similar. We disagree. The court of criminal appeals has specifically stated, "But sometimes, the specific conduct, as well as the elements, must be considered." *Anderson*, 394 S.W.3d at 536 n.21 (citing *Tex. Dep't of Public Safety v. Garcia*, 327 S.W.3d 898, 906–07 (Tex. App.—Austin 2010, pet. denied)). Because the Oklahoma statute defines multiple offenses, it is appropriate to consider the specific conduct involved to determine which offense Ratliff was convicted of. *Id.* Ratliff's testimony indicates that in the first offense, he performed oral sex on a six-year old child on at least two occasions, although he would not admit to a third occasion or

---

[2] Children under the age of 16 in Oklahoma, OKLA. STAT. tit. 21, § 1123 (1983), and children under the age of 17 in Texas, Tex. Penal Code Ann. § 21.11(a)(1).

[3] *See* OKLA. STAT. tit. 21, § 1123 (1983) (felony); TEX. PENAL CODE ANN. § 21.11(d) (second degree felony).

[4] *See* OKLA. STAT. tit. 21, § 1123 (1983) (1 to 20 years in prison); TEX. PENAL CODE ANN. § 12.33(a) (2 to 20 years in prison).

[5] The Oklahoma offense requires the touching be in a lewd or lascivious manner, meaning an unlawful indulgence or eagerness for sexual indulgence. *Reeves*, 818 P.2d at 504. The Texas offense requires touching with the intent to arouse or gratify the sexual desire of any person. Tex. Penal Code Ann. § 21.11(c).

that the child performed oral sex on Ratliff. He also admitted the second offense involved oral sex on and masturbating an eleven-year old child. He later acknowledged that he "probably did every bit of what [Dr. Price] says," because "the records are better than my memory." Thus, the specific conduct involved in the Oklahoma offenses indicates Ratliff was convicted of Lewd Molestation by touching under Oklahoma law.

Based on the record in this case, we conclude that the offense of Lewd Molestation by touching under Oklahoma law, OKLA. STAT. tit. 21, § 1123 (1983), contains elements substantially similar to the offense of indecency with a child by contact, TEX. PENAL CODE ANN. § 21.11(a)(1), and is a sexually violent offense under health and safety code section 841.002(8)(G). TEX. HEALTH & SAFETY CODE ANN. § 841.002(8)(G). There is evidence that Ratliff was convicted of the offense of Lewd Molestation under Oklahoma law on April 24, 1984 based on conduct that included touching the private parts of a child under the age of sixteen. The evidence is also undisputed that Ratliff was convicted and sentenced for aggravated sexual assault of a child in Texas. We conclude the evidence is legally and factually sufficient to support the finding that Ratliff is a repeat sexually violent offender. We overrule Ratliff's first and second issues.

## B. Fundamental Error

In his third issue, Ratliff argues the trial court committed fundamental error by determining the Oklahoma offenses contained elements substantially similar to the elements of a sexually violent offense listed in the SVP Act. This issue is conditioned on our determination that the first two issues were not preserved for appeal. We have concluded that Ratliff preserved his legal and factual sufficiency issues by raising them in his motion for new trial. *See* TEX. R. APP. P. 33.1(a); TEX. R. CIV. P. 324(b); *T.O. Stanley Boot Co.*, 847 S.W.2d at 220–21. Therefore, we need not address his third issue. TEX. R. APP. P. 47.1.

## C. Evidence of HIV Status

In his fourth issue, Ratliff argues the trial court committed fundamental error by admitting evidence that he is HIV positive.

Except for fundamental error, "appellate courts are not authorized to consider issues not properly raised by the parties." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006). Ratliff concedes he did not preserve error on the admission of evidence of his HIV positive status at trial. He claims, however, that it was fundamental error for the trial court to admit that evidence.

The fundamental error doctrine is a rare and discredited doctrine. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 510–15 (Tex. 2018) (discussing the history and limited nature of the fundamental error doctrine). It applies only in two "rare instances" when the error directly and adversely affects the public interest as declared in the constitution and statutes of the state or when the record affirmatively and conclusively shows the court lacked subject matter jurisdiction. *Id*. at 512–13.

Ratliff's HIV status was discussed at a pretrial hearing on motions in limine. The trial court ruled it would allow evidence that Ratliff is HIV positive and the defense could bring out on cross-examination that he only engaged in sex with other inmates who had HIV. The State mentioned Ratliff's HIV status in opening statement without objection. Ratliff's counsel also mentioned HIV during opening and asserted the diagnosis has "truly impacted [Ratliff's] life going forward." Dr. Price testified that Ratliff disclosed during their interview that he was diagnosed as HIV positive in 1997. Ratliff objected only on the ground of leading the witness. Dr. Price testified that Ratliff believed the diagnosis would reduce the risk he would re-offend and inhibit his sexual arousal. Dr. Price disagreed, saying it was inconsistent with Ratliff's behavior in prison, because Ratliff said he engaged in sex after he was diagnosed as HIV positive. Dr. Price later agreed with defense counsel that a HIV diagnosis can be a life changing event.

Ratliff admits he failed to preserve a rule 403 objection to the evidence regarding HIV status. *See* TEX. R. EVID. 403 (relevant evidence may be excluded when its probative value is substantially outweighed by the danger of unfair prejudice). Yet, he asserts that, "To aver that Ratliff is partially motivated by his [HIV] seropositive status to sexually re-offend gives rise to fundamental error." He claims it directly and adversely affects the interest of the public generally, as that interest is declared by the statutes and constitution of the state. However, it was Ratliff who sought to use his HIV status as a factor that would reduce the risk of his re-offending. The State's use of this evidence was in response to Ratliff's attempt to use the evidence in his favor. The alleged error does not fall within the narrow scope of the fundamental error doctrine as recognized by the Texas Supreme Court. *See In re Commitment of King*, No. 09-13-00255-CV, 2014 WL 346109, at *5 (Tex. App.—Beaumont Jan. 23, 2014, no pet.) (mem. op.). Having failed to preserve his rule 403 objection in the trial court, Ratliff may not now revive that objection on appeal in the guise of "fundamental error." We overrule Ratliff's fourth issue.

### D. Voir Dire Questions

In his fifth and sixth issues, Ratliff argues the trial court erred by overruling his objection to an alleged commitment question by the State and by sustaining the State's objection to his question to the panel regarding whether they thought he was a sexually violent predator because the State filed this lawsuit.

"Litigants have the right to question potential jurors to discover biases and to properly use peremptory challenges." *In re Commitment of Hill*, 334 S.W.3d 226, 228 (Tex. 2011) (per curiam) (citing *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 749–50 (Tex. 2006)). This right is subject to reasonable trial court control and the court's rulings are reviewed for an abuse of discretion. *Id.*

As a general rule, it is improper to ask prospective jurors what their verdict would be if certain facts were proved. *Vasquez*, 189 S.W.3d at 751; *Cortez v. HCCI–San Antonio, Inc.*, 159

–10–

S.W.3d 87, 94 (Tex. 2005). A commitment question seeks to bind or commit a veniremember to a particular verdict based on a hypothetical set of facts. *Lydia v. State*, 109 S.W.3d 495, 497 (Tex. Crim. App. 2003). "Questions that commit prospective jurors to a position, using a hypothetical or otherwise, are improper and serve no purpose other than to commit the jury to a specific set of facts before the presentation of any evidence at trial." *Id.* Commitment questions are not always improper. *Id.* at 498. A question is improper if it is a commitment question and is not limited to only those facts that lead to a valid challenge for cause. *Id.* 497–98 (citing *Standefer v. State*, 59 S.W.3d 177, 182–83 (Tex. Crim. App. 2001)). Legislatively mandated commitment questions are permissible. *See Hill*, 334 S.W.3d at 229–30 (asking potential jurors whether they would require the state to prove both elements required by SVP Act was not improper). Thus, prospective jurors may be asked whether they can follow the law. *Lydia*, 109 S.W.3d at 498 (giving examples).

The State asked the venire panel about whether past behavior is an indicator of future action. One panel member responded that people can change. The State then asked, "So if people change then how do we determine whether or not they're likely to commit some crime in the future?" The panel member responded, "There's no way to know." The State continued: "Okay. What happens if an expert comes up and tells you that a person is likely to do this again, someone who's trained in that field? Does that matter to you?" The panel member indicated it would. Ratliff then objected to the question as an improper commitment question, and the trial court overruled the objection.

The State contends the question was not an improper commitment question. We agree. The question did not attempt to bind the veniremembers to resolve or refrain from resolving an issue on the basis of one or more facts contained in the question. *See Halprin v. State*, 170 S.W.3d 111, 118–19 (Tex. Crim. App. 2005). Looking at the voir dire as a whole, the question was calculated to elicit whether the veniremembers would consider the evidence presented at trial,

including expert testimony, rather than decide the case based on preconceived notions that people can change. The trial court did not abuse its discretion by overruling the objection. We overrule Ratliff's fifth issue.

Ratliff next argues the trial court erred by sustaining the State's objection to one of his questions during voir dire. Ratliff's counsel asked the venire panel: "[J]ust because the State of Texas has filed this lawsuit alleging that Mr. Ratliff is a sexually violent [sic] who already thinks he is a sexually violent predator?" After several venire members responded and discussed the question with Ratliff's counsel, the State objected: "Judge, the State's gonna object in the sense that I'm not really sure what the question is and it doesn't sound like he's causing anybody if I'm correct about that." The trial court ruled that it did not consider the question as raising a challenge for cause.

The State concedes the question was directed at a proper subject of inquiry, but argues the form of the question was not proper. We agree. The question essentially asked if the State was starting out ahead because it filed the lawsuit. Asking whether a party is starting out ahead is often an attempt to elicit a comment on the evidence and to preview a potential juror's likely vote. *Cortez*, 159 S.W.3d at 94. Such attempts are improper. *Id.* If a trial court determines a question is improper, then, to preserve error, a party must propose a different question or alert the trial court to the specific area of inquiry it intends to pursue. *Vasquez*, 189 S.W.3d at 158–59; *In re Commitment of Scott*, No. 09-12-00244-CV, 2014 WL 1856839, at *2 (Tex. App.—Beaumont May 8, 2014, no pet.) (mem. op.).

The trial court's ruling in this case indicates the court did not consider the question to elicit responses from the panel that would support a challenge for cause. Thereafter, Ratliff took no steps to clarify his line of questioning or indicate to the court any basis for a challenge for cause. *See Vasquez*, 189 S.W.3d at 760 n.76 ("If the complaint on appeal is that a trial judge has not

–12–

allowed sufficient questions about a particular subject matter, then a party should detail its areas of inquiry before challenging the juror for cause, allowing the trial judge an opportunity to cure the problem."). Ratliff did not rephrase the question but simply moved on to a new line of questioning about whether the panel members would require him to put on his own defense.

The trial court did not limit or prohibit a proper line questioning of the panel. The trial court reasonably could have concluded the substance of Ratliff's question did not present a basis for disqualifying a juror for cause. *See Vasquez*, 189 S.W.3d at 758. Thus, the trial court did not abuse its discretion by so stating. *Id*. We overrule Ratliff's sixth issue.

## CONCLUSION

We affirm the trial court's judgment and order of commitment.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

161425F.P05

–13–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN RE: THE COMMITMENT OF BILL DON RATLIFF

No. 05-16-01425-CV

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause No. CV1570002.
Opinion delivered by Justice Stoddart.
Justices Francis and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 13th day of August, 2018.